UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANGEL LUIS MARES, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:23-cv-30044-KAR |
| | ) |
| MARTIN O'MALLEY, Commissioner, | ) |
| Social Security Administration,[1] | ) |
| | ) |
|   Defendant. | ) |

<u>MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR AN ORDER
REVERSING THE COMMISSIONER'S DECISION AND DEFENDANT'S MOTION TO
AFFIRM THE COMMISSIONER'S DECISION</u>
(Dkt. Nos. 13 & 19)

ROBERTSON, U.S.M.J.

I.     INTRODUCTION AND PROCEDURAL HISTORY

Angel M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff applied for DIB and SSI on February 16, 2020 alleging a July 6, 2018 onset of disability due to low back pain, GERD, head injury, cerebral hemorrhage, mental health, and respiratory inflammation (Administrative Record "A.R." at 189, 238).[2] His applications were denied initially (A.R. at 236, 256) and on reconsideration (A.R. at 276, 286). He requested a hearing before an administrative law judge

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of the Social Security Administration, is substituted for Kilolo Kijakazi, former Acting Commissioner of the Social Security Administration.

[2] Citations to "A.R." refer to the administrative record found at docket number 10. The page numbers, assigned by the Social Security Administration ("SSA"), appear in the lower right-hand corner of each page.

1

("ALJ"), and one was held on February 8, 2022 (A.R. at 149-83). On June 1, 2022, the ALJ issued an unfavorable decision on Plaintiff's claim (A.R. at 152-74). The Appeals Council denied review on March 10, 2023 and, thus, Plaintiff is entitled to judicial review (A.R. at 1-7).[3]

Plaintiff seeks remand based on his contention that the ALJ's residual functional capacity ("RFC") assessment was not supported by substantial evidence because the ALJ did not properly evaluate opinion evidence from Plaintiff's treating care providers concerning his physical and mental functional capacities. Before the court are Plaintiff's motion for an order reversing the Commissioner's decision (Dkt. No. 13) and the Commissioner's motion to affirm the decision (Dkt. No. 19). The parties have consented to this court's jurisdiction (Dkt. No. 9). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons set forth below, the court DENIES Plaintiff's motion and GRANTS the Commissioner's motion.

II. LEGAL STANDARD FOR ENTITLEMENT TO DIB AND SSI

A claimant is disabled under the Social Security Act if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant is unable to engage in any substantial gainful activity when he

> is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

---

[3] Plaintiff previously applied for DIB and SSI on June 21, 2018 (A.R. at 299). His claims were denied initially on March 18, 2019, and on reconsideration on June 10, 2019 (A.R. at 299). On June 24, 2020, after a hearing, the ALJ found that Plaintiff was not disabled (A.R. at 299-12). Plaintiff did not appeal the Appeals Council's denial of review (A.R. at 153). Plaintiff does not challenge the ALJ's statement that the prior hearing decision is final and binding as to the issue of Plaintiff's claimed disability from the date of alleged onset through June 24, 2020, the date of the prior hearing decision (A.R. 153).

exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ evaluates a claimant's impairment under a five-step sequential evaluation process set forth in the regulations promulgated by the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).[4] The hearing officer must determine whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant suffers from a severe impairment; (3) the impairment meets or equals a listed impairment contained in Appendix 1 to the regulations; (4) the impairment prevents the claimant from performing previous relevant work; and (5) the impairment prevents the claimant from doing any work considering the claimant's age, education, and work experience. *See id; see also Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982) (describing the five-step process). If the hearing officer determines at any step of the evaluation that the claimant is or is not disabled, the analysis does not continue to the next step. 20 C.F.R. § 404.1520(a)(4).

Before proceeding to steps four and five, the ALJ must assess the claimant's RFC, which the ALJ uses at step four to determine whether the claimant can do past relevant work and at step five to determine if the claimant can adjust to other work. *See id.*

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

---

[4] The SSA has promulgated identical sets of regulations governing eligibility for DIB and SSI. *See McDonald v. Sec'y of Health & Human Servs.,* 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, the court cites to the DIB (Title II) regulations only. *See id.*

3

The claimant has the burden of proof through step four of the analysis, including the burden to demonstrate his RFC. *See Flaherty v. Astrue*, Civil Action No. 11-11156-TSH, 2013 WL 4784419, at *8-9 (D. Mass. Sept. 5, 2013) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). At step five, the Commissioner has the burden of showing the existence of jobs in the national economy that the claimant can perform notwithstanding his restrictions and limitations. *See Goodermote*, 690 F.2d at 7.

III.     STANDARD OF REVIEW

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing. *See* 42 U.S.C. § 405(g). Judicial review is limited to determining "'whether the [ALJ's] final decision is supported by substantial evidence and whether the correct legal standard was used.'" *Coskery v. Berryhill*, 892 F.3d 1, 3 (1st Cir. 2018) (quoting *Seavey v. Barnhart,* 276 F.3d 1, 9 (1st Cir. 2001)). The court reviews questions of law *de novo, id.*, but "the ALJ's findings [of fact] shall be conclusive if they are supported by substantial evidence, and must be upheld 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion,' even if the record could also justify a different conclusion." *Applebee v. Berryhill*, 744 F. App'x 6, 6 (1st Cir. 2018) (per curiam) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981)). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (quoting *Bath Iron Works Corp. v. U.S. Dep't of Labor*, 336 F.3d 51, 56 (1st Cir. 2003) (internal quotation marks omitted)). In applying the substantial evidence standard, the court must be mindful that it is the province of the ALJ, and not the courts, to determine issues of

credibility, resolve conflicts in the evidence, and draw conclusions from such evidence. *See Applebee*, 744 F. App'x at 6. That said, the ALJ may not ignore evidence, misapply the law, or judge matters entrusted to experts. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

IV.     THE ALJ'S DECISION

At the first step in the five-step sequential evaluation, the ALJ found that Plaintiff met the insured status requirements through March 31, 2023 and had not engaged in substantial gainful activity after July 6, 2018, the alleged disability onset date (A.R. at 155). *See* 20 C.F.R. § 404.1571 *et seq*. At the second step, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, asthma, anxiety disorder, depressive disorder, personality disorder, and post-traumatic stress disorder ("PTSD") (A.R. at 156). *See* 20 C.F.R. 404.1520(c). At step three, she found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in C.F.R. Part 404, Subpart P, Appendix 1 (A.R. at 156-59). Addressing the paragraph B criteria, the ALJ found that Plaintiff had moderate limitations in his ability to understand, remember, or apply information, interact with others, and adapt or manage himself (A.R. at 157-58). With regard to concentrating, persisting, or maintaining pace, the ALJ found that Plaintiff's limitations were mild (A.R. at 158). Before proceeding to steps four and five, the ALJ determined that Plaintiff had the RFC to perform light work[5] with the following additional limitations:

---

[5] SSA regulations define light work as work that:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of

> [He] can perform occasional stooping, crouching, crawling, kneeling and climbing ramps and stairs. [He] cannot climb ladders, ropes and scaffolds. [He] cannot balance as defined in the DOT/SCO. [He] can understand, remember and carry out simple instructions throughout an ordinary workday and workweek with normal breaks on a sustained basis. [He] cannot interact with the general public, but can work in the general vicinity. [He] can respond appropriately to occasional and superficial interaction with coworkers for simple work related matters. [He] can respond appropriately to supervisory directions and supervisory feedback for simple work related matters. [He] can adapt to simple and occasional change in the routine work setting. [He] can tolerate occasional exposure to concentrated: dust, fumes, odors, gases and poor ventilation.

(A.R. at 159). At step four, the ALJ found that Plaintiff was not able to perform his past relevant work as a kitchen helper, building custodian, machine packager, or warehouse worker (A.R. at 171). She further found that, considering Plaintiff's age, education, work experience, and RFC, and based on the vocational expert's testimony, Plaintiff could perform the unskilled jobs of routing clerk, photocopy machine operator, and power screwdriver operator (A.R. at 172-73). *See* 20 C.F.R. §§ 404.1569, 404.1569(a). Consequently, the ALJ concluded that Plaintiff was not disabled (A.R. at 173-74).

V.     ANALYSIS

The ALJ accepted the opinions of the state agency consultants as to limits on Plaintiff's ability to stand and walk and interact with the public, co-workers, and supervisors. Plaintiff takes issue with the ALJ's partial rejection of the opinions of Plaintiff's treating care providers, Lucille Gough Passer, P.A., and Shanealla Jernigan, M.S.W., concerning the extent of Plaintiff's

---

> light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).
!

physical and mental functional limitations.  For his part, the Commissioner argues that the ALJ adequately explained her reasons for not adopting Ms. Passer's and Ms. Jernigan's opinions in full and that the ALJ's determination is supported by substantial evidence.

     A.     <u>Evaluating Opinion Evidence</u>

"Under the regulations governing [Plaintiff's] application, an ALJ does not assign specific evidentiary weight to any medical opinion and need not defer to the opinion of any medical source (including the claimant's treating providers)." *Richardson v. Saul*, 565 F. Supp. 3d 154, 167 (D.N.H. 2021) (citing 20 C.F.R. § 404.1520c(a)).  A "medical opinion" is defined as:

> a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions in the abilities . . . to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching) . . . [and] to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting.

20 C.F.R. § 404.1513(a)(2)(i), (ii).  The most important factors to be considered in assessing the persuasiveness of a medical opinion are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a), (b)(2).  As regards supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).  "Objective medical evidence is medical signs, laboratory findings, or both . . . ." 20 C.F.R. § 404.1513(a)(1).  As regards consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Other factors that are weighed are the medical source's relationship with the claimant, the source's medical specialization, and what the SSA refers to as "other factors" that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(3)-(5). "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." 82 Fed. Reg. at 5854. An ALJ is required to consider how persuasive she found the medical opinions from each medical source and must evaluate the supportability and consistency factors for each medical opinion in the record but is not required to address the other factors. 20 C.F.R. § 404.1520c(b)(1)-(2); *see also Richardson*, 565 F. Supp. 3d at 167-68 (discussing the ALJ's obligations to explain her treatment of medical opinion evidence).

      B.      Ms. Passer's opinion

Ms. Passer worked as a physician's assistant at Baystate Brightwood Health Center, where Plaintiff regularly received primary medical care. On May 26, 2021, Ms. Passer wrote a brief letter in which she opined that Plaintiff was able to work but low back pain due to degenerative disc disorder and chronic knee pain due to arthritis prevented him from standing in the same place for more than thirty minutes and walking continuously for more than thirty minutes. In connection with Plaintiff's limited ability to stand and walk, Ms. Passer noted that Plaintiff usually walked with a cane. She further indicated that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently (A.R. at 1238).

After reviewing Plaintiff's longitudinal treatment records and considering the medical opinions, the ALJ accepted Ms. Passer's lifting restrictions as supported by objective medical evidence showing normal strength in his extremities and as consistent with Plaintiff's hearing testimony (A.R. at 169-70). The ALJ found that Ms. Passer's opinions about Plaintiff's walking

and standing limitations and use of a cane were neither well-supported nor consistent with the record as a whole (A.R. at 160-64, 169-70). In terms of whether Ms. Passer's opinions were supported, the ALJ noted that, on the same date that Ms. Passer offered the opinions about the limits on Plaintiff's ability to walk and stand, her treatment notes indicated that Plaintiff was working out at the Y four times a week and trying to find a part-time job, preferably a physical job. She advised Plaintiff to continue with his exercise and use a cane as needed (A.R. 163). The ALJ observed that notes made by Ms. Passer at appointments subsequent to May 26, 2021, indicated that his gait was within normal limits and made no references to the use of a cane or other assistive device (A.R. 170).

     As to consistency with other aspects of the medical record, the ALJ noted that records other than Ms. Passer's note made no reference to a cane or other assistive device, showed a gait that was somewhat antalgic or within normal limits, that he was able to rise from a chair without a problem, and had a normal Romberg test, meaning that his balance was not impaired (A.R. 170). Specifically, the ALJ noted that records of Plaintiff's visits to the Baystate Medical Center's Emergency Department, Baystate Neurology, and New England Orthopedic Surgeons ("NEOS") were not consistent with Ms. Passer's opinions about Plaintiff's functional limitations (A.R. at 170). The record of Plaintiff's January 1 and 7, 2021 emergency department visits for abdominal pain indicated that his back displayed a normal range of motion (A.R. at 163, 793, 858). He returned to the emergency department after he was struck by a car on August 3, 2021. He ambulated without any problems on that date (A.R. at 163, 1127). On April 9, 2021, the neurology P.A. noted that Plaintiff's gait was narrow-based and somewhat antalgic, but he walked heel and toe without difficulty and his tandem gait and Romberg test were normal (A.R. at 162-63, 1037). There was no mention of Plaintiff's use of a cane or other assistive device, or a

need for a cane or other assistive device, in any of these records (A.R. at 168, 1035-38). Plaintiff's June 26, 2020 and February 25, 2022 NEOS treatment notes indicated that his lumbar spine range of motion was 60% normal, but he arose from a seated position without difficulty, his back was nontender to palpation, his hip and knee range of motion were full, and the heel and toe walk were within normal limits (A.R. at 161, 164, 1563). His seated straight leg raises were negative in 2020, and positive on the right in February 2022 (A.R. at 1563, 1565). His gait was within normal limits with no limp detected during both visits (A.R. at 170, 1563, 1565). Plaintiff's March 15, 2022 NEOS treatment note mirrored the February 2022 note with the exception that Plaintiff's gait was antalgic (A.R. at 164, 1578-79). Plaintiff was observed to have a normal gait during the week before that March NEOS examination (A.R. at 164, 1572). The ALJ also found the state agency consultant opinions about Plaintiff's ability to stand and walk to be consistent with Plaintiff's well-documented "routine and conservative treatment" and the mostly benign physical examinations (A.R. at 167-68). *See Brocklesby v. Kijakazi,* CIVIL ACTION NO. 20-10113-IT, 2021 WL 8316260, at *12 (D. Mass. Oct. 25, 2021) (the ALJ appropriately considered whether an opinion was consistent with the plaintiff's "routine and conservative treatment").

      To the extent Plaintiff suggests that because the ALJ found that the MRIs supported functional limitations that the state consultants had not identified, the MRIs were consistent with Ms. Passer's opinions about the limits on Plaintiff's ability to stand and walk (Dkt. No. 14 at 12-13), such a contention is not persuasive. The ALJ found that the treatment records supported postural limitations (balance and climbing ladders, ropes, and scaffolds) that the state agency consultants had not identified (A.R. at 159, 167-68, 249, 282). These restrictions are distinct from opinions about limits on Plaintiff's ability to stand and walk. The state agency consultants

reviewed April 2019 and June 2020 MRI reports that showed degenerative changes to Plaintiff's lumbar spine (A.R. 263-64, 282) and opined that Plaintiff could stand and/or walk for up to six hours in an eight-hour workday (A.R. 268, 281). The ALJ accepted their view that Plaintiff could perform light work, which, by definition, is work that may include a good deal of standing or walking. *See* 20 C.F.R. § 404.1567(b). She was entitled to rely on the state agency consultants in doing so, particularly where Ms. Passer did not support the functional limitations she identified by reference to *any* objective medical evidence such as, for example, the contents of the MRI reports

Plaintiff's attempt to rely on Robert Cowan, M.D.'s recommendation of fusion surgery on May 24, 2022 to support his argument that Ms. Passer's opinion was consistent with the treatment records fails because Dr. Cowan's May 2022 treatment record and the records of Plaintiff's September 2022 procedure were not before the ALJ (A.R. at 57, 143-44). At the February 8, 2022 hearing, the ALJ indicated that she would keep the record open until March 15, 2022 (A.R. at 184, 220). The ALJ issued her decision on June 1, 2022 (A.R. at 174). Plaintiff did not submit the May 2022 treatment record to the ALJ and he has not pointed to legal authority that would support requiring the ALJ to consider these treatment records. *See* 20 C.F.R. § 404.935(b). In any event, the May 24, 2022 record was generally consistent with NEOS's March 15, 2022 examination findings except that, in May, Plaintiff's seated straight leg raises were negative and his gait was within normal limits with no limp detected (A.R. at 84).

In effect, Plaintiff invites the court to reweigh the evidence and reach a decision more favorable to him as to Ms. Passer's opinion evidence. It is well-established, however, that resolving conflicts in the evidence is the province of the ALJ. *See Rodriguez,* 647 F.2d at 222 ("the resolution of conflicts in the evidence and the determination of the ultimate question of

11

disability is for [the Commissioner], not for the doctors or the courts."). "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." *Benetti v. Barnhart*, 193 F. App'x 6, 7 (1st Cir. 2006) (per curiam) (unpublished). The ALJ adequately explained her view that Ms. Passer's opinion was not well-supported and was inconsistent with the other evidence and that view was supported by substantial record evidence.

    C.      Ms. Jernigan's opinion

Plaintiff received mental health treatment at CHD from November 2020 to June 2021 (A.R. at 1001-16, 1167-82, 1413-24). In June 2021, Plaintiff's CHD therapist, Ms. Jernigan, issued the following opinion:

> [Plaintiff] physically can perform work related duties, however, [Plaintiff] has difficulty expressing himself and communicating effectively with others. Often in our session he would get angry and become verbally aggressive and hard to redirect. [Plaintiff] also acknowledges that this is a barrier for him. There were times where he would call to ask for assistance with how to communicate . . . his needs because he was unable to do so effectively. It is in my knowledge that [Plaintiff] struggles with professional relationships due to anger and often does not know how to regress and can become offensive and aggressive beyond his control. [Plaintiff] will struggle with work pressures and responding appropriately in the work environment when given constructive criticism. Sometimes he does not understand the context of specific conversation and can become combative and sometimes aggressive depending on the nature of the conversation. [Plaintiff] struggles when there is a significant amount of people around and is known to shut down if he feels like he is being judged.

(A.R. at 1094). Plaintiff argues that the ALJ, who found Ms. Jernigan's opinions partially persuasive, failed to identify what part(s) of the opinions she accepted, and failed adequately to explain why, if the opinions were supported, the ALJ found that they were not otherwise consistent with the record (Dkt. No. 13-16). While the ALJ could perhaps have been clearer in explaining her decision in terms of supportability and consistency, it is not difficult to discern her reasoning on these points, and her decision is supported by substantial evidence.

As to Plaintiff's argument concerning the supportability of Ms. Jernigan's opinions, the ALJ pointed to Ms. Jernigan's treatment notes as supporting her opinions, but she also pointed to Plaintiff's records from 2021 and 2022 – after he ceased treating with Ms. Jernigan and began treating at the Mt. Tom Health Center – which showed that his anger and irritability symptoms improved with medications, particularly Risperdal that was prescribed in October 2021 (A.R. at 171, 1427, 1528, 1532-33). In March 2022, Ms. Passer noted that Plaintiff's appearance, speech, and thought processes were within normal limits and Plaintiff told Ms. Passer that he was doing "much better" after his Risperdal dosage was increased in January (A.R. at 166, 1528, 1569, 1572). While Ms. Jernigan's opinions may have been supported by her treatment notes, they were not supported by the records of Plaintiff's subsequent mental health treatment.

Second, Plaintiff's contention that the ALJ did not indicate which portions of Ms. Jernigan's opinions she found persuasive is not born out by the record. In the RFC, the ALJ found that Plaintiff should not have any direct interaction with the general public, indicating her acceptance of Ms. Jernigan's opinion that Plaintiff struggled with large groups of people (A.R. at 159, 170-71, 1094). As to Ms. Jernigan's opinion that Plaintiff's irritability and anger caused him to struggle with professional relationships (A.R. at 1094), there is substantial evidence in the record for the ALJ's determination that medication improved those symptoms and that Plaintiff's social interaction limitations could be accommodated by restricting him to occasional and superficial interaction with co-workers for simple work-related matters (A.R. at 159, 171, 1094). Contrary to Plaintiff's contention that the RFC did not address Ms. Jernigan's opinion that Plaintiff would struggle with constructive criticism (Dkt. No. 14 at 15), the RFC reflected this limitation by providing that Plaintiff could only work in positions in which his interactions with supervisors would be limited to addressing simple work-related matters (A.R. at 159, 171).

Third, the RFC was supported by and consistent with the state agency consultant opinions (Dkt. No. 14 at 15). The initial state agency reviewer opined that Plaintiff was markedly limited in his ability to interact appropriately with the general public and moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors and recommended that Plaintiff be limited to having no contact with the general public and working in settings that did not require extensive collaboration with colleagues or that allowed independent work (A.R. at 168, 251-52). On reconsideration, the reviewing state agency evaluator opined that Plaintiff would be able to accept simple instructions from supervisors and have limited interaction with co-workers, and should have no contact with the general public (A.R. at 168, 283). Contrary to Plaintiff's argument that Ms. Jernigan's opinion was consistent with the state agency reviewers' views of Plaintiff's limitations, the RFC was consistent with the assessments of Plaintiff's social restrictions provided by the state agency reviewers (Dkt. No. 14 at 15; A.R. at 159, 283). Moreover, "'state-agency reviewers' opinions may be sufficient to support an assigned RFC.'" *Amanda C. v. Saul*, 1:19-cv-00539-JAW, 2020 WL 5106744, at *4 (D. Me. Aug. 31, 2020), *report & rec. adopted,* 1:19-cv-00539-JAW, 2020 WL 6886257 (D. Me. Nov. 24, 2020) (quoting *Gagnon v. Colvin*, No. 2:13-cv-00213-NT, 2014 WL 3530629, at *3 (D. Me. July 15, 2014)).

The ALJ explained that she assigned partial weight to the state agency consultant opinions because she disagreed with their assessment that Plaintiff's ability to understand, remember, and carry out simple instructions was mildly limited (A.R. at 169, 246, 251, 280, 283). Instead, the ALJ found that Plaintiff had moderate limitations in that functional area (A.R. at 169). The ALJ's determination was supported by a consultative psychological examination

submitted to the SSA in support of Plaintiff's initial application for disability benefits, which was not successful (A.R. at 309).[6]

"A reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of the rationale *actually articulated* by the agency decision-maker." *Vicki M. v. Kijakazi*, No. 1:20-cv-00474-NT, 2021 WL 6280201, at *4 (D. Me. Dec. 19, 2021) (cleaned up), *aff'd*, 2022 WL 43701 (D. Me. Jan. 5, 2022).  The court has no problem comprehending the ALJ's reasons for partially accepting the opinions of Ms. Passer and Ms. Jernigan or in determining that her reasoning was supported by substantial record evidence.  Plaintiff has not shown that he is entitled to have his case remanded to the Commissioner.

VI.   CONCLUSION

For the reasons set forth above, Plaintiff's motion for an order reversing the Commissioner's decision (Dkt. No. 13) is DENIED and the Commissioner's motion for an order affirming her decision (Dkt. No. 19) is GRANTED.  The clerk is directed to close the case on the court's docket.

It is so ordered.

Date:  August 22, 2024                                        /s/ Katherine A. Robertson
                                                              KATHERINE A. ROBERTSON
                                                              United States Magistrate Judge

---

[6] Plaintiff points to a January 9, 2023 behavioral health treatment note as consistent with Ms. Jernigan's opinion (Dkt. No. 14 at 14-15).  The ALJ could not have considered that record because she issued her decision on June 1, 2022 (A.R. at 174).  *See, e.g., Anderson v. Colvin*, CIVIL ACTION NO. 15-10480-IT, 2016 WL 2605093, at *7 n.8 (D. Mass. Mar. 9, 2016) (the ALJ could not have reviewed progress notes generated after the date of the ALJ's written decision).